UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLEN LESLIE CLOYD,<br><br>               Plaintiff,<br><br>v.<br><br>SCOTT BREWER, CORRECTIONAL OFFICER HENRIE, sued in their individual capacities, and WARDEN TEREMA D. CARLIN, sued in her official and individual capacities,<br><br>               Defendants. | Case No. 3:13-cv-00335-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are two dispositive motions and a variety of ancillary motions in this civil rights action filed by pro se Plaintiff Glen Cloyd, an inmate at the Idaho Correctional Institution-Orofino (ICIO). Alleging Eighth Amendment violations under 42 U.S.C. § 1983 and negligence under Idaho law, Cloyd brought suit against three defendants: ICIO Sergeant Scott Brewer, ICIO Corrections Officer Michael Henrie, and ICIO Warden Terema Carlin.

Defendants filed a motion to dismiss Cloyd's state law negligence claims under Federal Rule of Civil Procedure 12(b)(6), (Dkt. 28), to which Cloyd has not responded. In

addition, Defendants filed a motion for summary judgment on Cloyd's § 1983 claims, (Dkt. 29), which Cloyd has opposed—with a response and what are essentially two unauthorized surreplies. Defendants filed motions to strike the two surreplies as improper supplemental responses. (Dkt. 37, 40.)  Also pending is Cloyd's Motion for Appointment of Counsel. (Dkt. 31.)

All parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Dkt. 23.) In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, all pending motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d). Accordingly, the Court enters the following disposition.

## MOTION TO DISMISS STATE LAW CLAIMS (DKT. 28)

On October 13, 2014, Defendants filed a motion to dismiss and supporting memorandum regarding Cloyd's state-law negligence claims. Defendants argue these claims are subject to dismissal, because Cloyd failed to file a notice of tort claim before filing suit, as required by the Idaho Tort Claims Act, Idaho Code § 6-901, *et seq*. The next day, the Clerk of Court sent Cloyd a notice, informing him that a response to Defendants' motion was required within 21 days. (Dkt. 30.) The notice also stated, in accordance with Local Civil Rule 7.1(e)(1), that Cloyd risked having his claims dismissed if he failed to respond to Defendants' motion. To date, Cloyd has not responded to the motion and the time for doing so is long past.

This Court's Local Rule 7.1(c)(1) requires a response to a motion within 21 days after service of the memorandum of points and authorities supporting the motion. Further,

**MEMORANDUM DECISION AND ORDER - 2**

a party's failure to timely respond to a motion to dismiss may be "deemed to constitute a consent to . . . granting of said motion." Dist. Idaho Loc. Civ. R. 7.1(e)(1). "Failure to follow a district court's local rules is a proper ground for dismissal" if the following factors weigh in favor of dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (internal quotation marks omitted). Having weighed these factors and the merits of Defendants' motion to dismiss, the Court finds it would be appropriate to dismiss Cloyd's state law negligence claim for failure to contest Defendants' motion to dismiss.

In addition, however, Defendants' motion succeeds on the merits. The Idaho Tort Claims Act establishes procedures for bringing certain tort claims against governmental entities under Idaho law. In particular, the Act requires, as a condition precedent to filing suit against the State or its employees, that the plaintiff file a notice of tort claim with the Secretary of State. Idaho Code § 6-905; *Smith v. City of Preston*, 586 P.2d 1062, 1065 (Idaho 1978). The notice must be filed "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." *Id*. The State then has 90 days to approve or deny the claim, and the State's failure to act within this 90-day period constitutes a denial of the claim. *Id*. § 6-909. If the State denies the claim, the plaintiff may file a lawsuit in district court. *Id.* § 6-910.

"No claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by" the

Tort Claims Act. *Id*. §6-908. The Idaho Supreme Court "has consistently interpreted the language of I[daho] C[ode] §6-908—that no claim or action shall be 'allowed'—to mean that compliance with the notice requirement of the Tort Claims Act is a mandatory condition precedent to bringing an action under the Act." *Madsen v. Idaho Dept. of Health & Welfare*, 779 P.2d 433, 436 (Idaho Ct. App. 1989). Emphasizing this mandatory condition precedent, the United States Court of Appeals for the Ninth Circuit has affirmed this Court's strict construction of the Act's notice requirement. *Butler v. Elle*, 281 F.3d 1014, 1029 (9th Cir. 2002). And recent decisions by the Idaho Supreme Court do not call this strict construction into question. *E.g.*, *Turner v. City of Lapwai*, 339 P.3d 544, 547–48 (Idaho 2014) (finding claim barred by failure to present notice to city clerk despite city's actual notice of claim and absence of prejudice); *Alpine Village Co. v. City of McCall*, 303 P.3d 617, 622–23 (Idaho 2013) (holding claim against city was procedurally barred by failure to file timely notice).

In this case, Cloyd filed his Prisoner Civil Rights Complaint on August 5, 2013, alleging, among other claims, that Defendants were negligent under Idaho law. Cloyd did not file a notice of tort claim with the Secretary of State until August 19, 2013—two weeks after he filed this lawsuit. (Artiach Aff. ¶ 4, Dkt. 28-2.) The fact that Cloyd eventually filed his notice after filing his complaint does not absolve his failure to follow the Tort Claims Act's mandatory procedures. *Butler*, 281 F.3d at 1029. To find otherwise would not only contradict the Act's mandatory procedures, it would expand a limited waiver of Idaho's sovereign immunity and defeat three of the Act's central purposes:

**MEMORANDUM DECISION AND ORDER - 4**

"(1) saving litigation expenses by allowing amicable resolution of suits; (2) allowing authorities to conduct a full investigation into the circumstances of the claim to determine the extent of government liability; and (3) allowing the government to prepare its defenses." *Id*. Accordingly, the Court will grant Defendants' motion to dismiss.

## MOTIONS TO STRIKE (DKT. 37 & 40)

Defendants move to strike two of Cloyd's filings in response to Defendants' motion for summary judgment. First, Defendants argue Cloyd's "Supplemental Motion to Deny Summary Judgment Pursuant to Fed.R.Civ.P. – Rule 56(e)," (Dkt. 35), violates the Court's Scheduling Order, District of Idaho Local Civil Rule 7.1, and the sham affidavit rule. Defendants likewise claim Cloyd's "Motion to Clarify Plaintiff's Allegations in Supplemental Motion to Deny Summary Judgment," (Dkt. 39), violates the Scheduling Order and Local Rule 7.1.

The Court's Scheduling Order provides: "**Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court.**" (Dkt. 22 at 4.) Relevant here, Local Rule 7.1 authorizes a party responding to a motion for summary judgment to file (1) a response brief, (2) supporting materials *with the response brief*, and (3) a statement of disputed facts. Absent leave of the Court, neither the Scheduling Order nor the Local Rules authorize a responding party to supplement the filings allowed by Local Rule 7.1 with additional materials. Cloyd did not request and was not granted leave to file additional materials in opposition to Defendants' motion for summary judgment. Because Cloyd's supplemental

**MEMORANDUM DECISION AND ORDER - 5**

filings are essentially unauthorized surreplies, they may not be considered in connection with Defendants' motion for summary judgment.

Alternatively, even if the Court considered Cloyd's unauthorized surreplies, they would not change the outcome of Defendants' motion for summary judgment. As discussed below, Cloyd's Eighth Amendment claims require him to present evidence that he faced a substantial risk of serious harm from his cellmate, Adam Lopez, and that the Defendants deliberately disregarded that risk. Cloyd's surreplies attempt to call the Court's attention to evidence Cloyd believes sufficient to meet this standard.

As evidence of the risk posed by Lopez, Cloyd's supplemental filings emphasize records indicating prison officials disciplined Lopez for aggravated assault in February of 2011 and battery in March of 2013. The battery pertains to the incident at the heart of this case—Lopez's March 26, 2013 battery of Cloyd—and thus could not have put Defendants on notice that Lopez presented a risk to Cloyd's safety *before* the incident occurred. And, as discussed in detail below, the February 2011 aggravated assault involved Lopez's threatening conduct toward another inmate while he was incarcerated at a different facility, which does not establish that Lopez posed a risk of physical violence toward anyone.

As evidence that Defendants were aware Lopez was a risk to Cloyd's safety, Cloyd's supplemental filings attempt to establish that Lopez threatened Cloyd with physical harm while the two shared a cell and that Cloyd reported those threats to Defendants Brewer and Henrie. (Dkt. 35 at 2,5; Dkt. 39 at 2–3.) Although styled as motions, these document feature the seal of an Idaho notary public and state they were

**MEMORANDUM DECISION AND ORDER - 6**

"subscribed and sworn and affirmed," suggesting Cloyd may have intended them to be factual affidavits. (Dkt. 35 at 6; Dkt. 39 at 4.) Even if so construed, "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal quotation omitted). Cloyd's surreplies run afoul of this sham affidavit rule because Cloyd's August 12, 2014 deposition testimony plainly contradicts Cloyd's more recent assertions that Lopez "threatened him with physical harm." (Dkt. 35 at 2.) During his deposition, Cloyd unequivocally stated that Lopez never threatened him with physical harm before the March 26, 2013 incident:

> Q:   Okay. At any time – at any time when you and Lopez were roommates, did
>      he threaten you with physical harm?
> A:   No.
> Q:   Okay. And so he never did that up from the time you became roommates
>      until this incident?
> A:   Correct.
> Q:   Now, . . . am I right that you and Lopez didn't have a lot of conversations?
> A:   Correct.
> Q:   And so –
> A:   If there was conversation, it was small talk.
> Q:   But nothing threatening?
> A:   Nothing threatening.

(Cloyd Depo. 78:25–79:17, Dkt. 29-5.)

"[A] party who has been examined at length on deposition" cannot "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, [as] this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (quotation omitted). While the non-moving party on a motion for summary judgment is

**MEMORANDUM DECISION AND ORDER - 7**

entitled to clarify or explain prior inconsistent testimony, he cannot simply change his unfavorable deposition testimony by submitting a contrary but favorable sworn statement at a later date. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Cloyd's attempt to do just that is an additional reason for not considering the surreplies in connection with Defendants motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT (DKT. 29)

Cloyd's § 1983 claims allege Sergeant Brewer, Corrections Officer Henrie, and Warden Carlin violated Cloyd's Eighth Amendment rights by failing to protect Cloyd from his cellmate. Defendants' motion for summary judgment argues the record does not establish a constitutional violation and, even if it did, the Defendants are entitled to qualified immunity. In opposition, Cloyd claims there is a genuine dispute as to Defendant's knowledge of his cellmate's violent tendencies.

## 1.    Legal Standard

Rule 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir.2010) (quoting *Anderson*, 477 U.S. at 248).

**MEMORANDUM DECISION AND ORDER - 8**

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

2.      **Facts**[1]

At all times relevant to this action, Cloyd was an inmate in the custody of the Idaho Department of Corrections housed at ICIO. From approximately March 22 to 26, 2013, Cloyd shared a cell with Adam Lopez. At the time Lopez was transferred to Cloyd's cell, Cloyd did not know Lopez, had never spoken to him, and had seen him only once. (Cloyd Depo. 54:10–25, Dkt. 29-5.) After Lopez moved into Cloyd's cell, however, Cloyd began to fear for his personal safety.

According to Cloyd's deposition testimony, this fear arose from Lopez's behavior in the cell and towards other inmates. Cloyd believed Lopez was mentally unstable, as Lopez would comment that people walking past the cell were "watching him." (*Id*. 62:14–17.) Lopez on one occasion refused to help Cloyd clean their cell. (*Id*. 62:13–14.)

---

[1]      The following facts are undisputed unless otherwise indicated. When the facts are disputed, they are taken in the light most favorable to Cloyd, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the nonmoving party on motion for summary judgment).

**MEMORANDUM DECISION AND ORDER - 9**

But Cloyd and Lopez rarely spoke, and, "[i]f there was conversation, it was small talk[,]

[n]othing threatening." (*Id.* 79:14–17.)

Additionally, other inmates told Cloyd that Lopez almost fought an inmate named

Emmett Neigo in the ICIO day room. During his deposition, Cloyd provided the

following description of the altercation between Lopez and Neigo:

> Q:    Were you there?
> A:    I was in my cell when it happened.
> Q:    So you didn't see it.
> A:    I didn't see it.
> Q:    Did you hear it?
> A:    No, but the people—the two people that did hear it expressed their
>        feelings about the incident and told me to go to the Sergeant or the CO and
>        let them know that what [sic] happened.
> Q:    Okay. Who were those people?
> A:    His last name is Twiggs, T-w-i-g-g-s.
> Q:    Okay. Who is the other one?
> A:    An inmate Neigo. N-i-e-g-o, I believe, or—yeah—or N-e-i-g-o.
> Q:     And they told you there was an altercation, did it get to be a physical
>        altercation?
> A:    No.
> Q:    A verbal altercation?
> A:    Correct.
> Q:    And what was it about, the altercation?
> A:    He—Adam Lopez came up to Neigo, Emmett Neigo, and said something to
>        the effect that he did something or was doing something he didn't like.
> Q:    Okay. So Neigo was who Lopez talked to and Neigo was one of the people
>        that talked to you?
> A:    Correct.
> ***
> Q:    And do you know if it was true?
> A:    I would assume it was because the two people, Neigo and Twiggs I knew
>        fairly well.

(*Id.* 62:24–64:1, 64:13–15.)

On or about March 24, 2013, Cloyd spoke to Sergeant Brewer and Corrections

Officer Henrie about Lopez. The parties dispute the substance of these conversations.

**MEMORANDUM DECISION AND ORDER - 10**

Although Henrie does not recall the conversation, (Henrie Aff. ¶ 4, Dkt. 29-3), Cloyd maintains he told Henrie that he feared for his own safety and that either Cloyd or Lopez needed to be moved to a different cell. (Cloyd Dep. 66:2–21.) Cloyd also requested that Henrie relate Cloyd's concerns to Brewer. According to Cloyd, Henrie did not ask for, and Cloyd does not remember stating, a reason why he feared for his safety. (*Id*. 66:22–67:11.)

Later that day, Cloyd spoke to Brewer. Cloyd told Brewer that Lopez made him fear for his safety and that he wished to be moved to a different cell. (*Id*. 70:11–16.) Cloyd also told Brewer about the verbal altercation between Neigo and Lopez. (*Id*. 70:17–22.) That was the full extent of the conversation between Cloyd and Brewer according to Cloyd. In his affidavit, Brewer states he instructed Cloyd to submit a concern form requesting to be moved. (Brewer Aff. ¶ 4, Dkt. 29-2.)

On the evening of March 26, 2013, Lopez turned on the cell light while Cloyd was sleeping. Cloyd awoke and twice asked Lopez to turn off the light. Lopez did not respond, and Cloyd again asked him to turn off the light. Without warning, Lopez hit Cloyd and pushed Cloyd down onto his bunk as he attempted to get up. (Cloyd Depo. 90:14–91:24.) According to Warden Carlin, prison staff immediately separated the two men, and Lopez received a disciplinary report for battery. (Carlin Aff. ¶¶ 6–7.) There were no further incidents between the two men, and Lopez was released from State custody in March of 2014. (*Id*. ¶ 8.)

**MEMORANDUM DECISION AND ORDER - 11**

On April 10, 2013, Cloyd filed a concern form, claiming Brewer and Henrie failed to protect Cloyd from Lopez despite Cloyd's warnings. (Dkt. 33-1 at 3.) On April 12, Brewer responded in writing:

> Mr. Cloyd there was no evidence you were in danger. You said you and your cellie were not getting along. Not that threats were made. I cannot move someone every time someone says that there [sic] not getting along with there [sic] cellie!

(*Id.*)

## 3.   Discussion

To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Cloyd's § 1983 claims allege Defendants' failure to protect him from Lopez constituted cruel and unusual punishment in violation of the Eighth Amendment. His Complaint alleges Warden Carlin is liable in both her official and individual capacities. Brewer and Henrie are sued in their individual capacities only. The Court will first address Cloyd's official capacity claim against Carlin before turning to his individual capacity claims against all three Defendants.

### A.   *Official capacity claim against Warden Carlin*

Cloyd alleges Warden Carlin, acting as a state official, created an unofficial policy or custom of ignoring ICIO inmates' reports about threats to their personal safety.[2] He

---

[2]      To the extent Cloyd's claim concerning an official policy or custom relies on *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978), that reliance is misplaced. *Monell* applies only to claims against municipalities, municipal officials, or private entities acting under

**MEMORANDUM DECISION AND ORDER - 12**

seeks money damages, as well as declaratory and injunctive relief. Defendants argue Cloyd's official capacity claim against Carlin fails as a matter of law.

As an initial matter, an official capacity claim against Warden Carlin is equivalent to a claim against the State of Idaho itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). A state is not a "person" within the meaning of § 1983. *Id*. Therefore, a state official sued in her official capacity is not a "person" subject to suit under § 1983. *Id*. For this reason, § 1983 does not authorize an official capacity claim for money damages against Carlin.

A plaintiff may, however, obtain prospective relief against state officials in certain circumstances. *Ex Parte Young*, 209 U.S. 123, 157-58 (1908); *see also Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). To fall within this narrow exception to Eleventh Amendment state sovereign immunity, the plaintiff must seek a remedy for a state official's "continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). But, if the plaintiff seeks a remedy for a wholly past violation of federal law, the Eleventh Amendment prevents the federal courts from exercising jurisdiction over the claim. *Id*.

Here, Cloyd seeks declaratory and injunctive relief against Carlin for wholly past alleged violations of his constitutional rights. The alleged failure to protect Cloyd from Lopez occurred in March of 2013, Cloyd and Lopez were separated immediately after the altercation, and there were no further incidents between them. (Carlin Aff. ¶ 6–7, Dkt.

---

color of state law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012). As warden of ICIO, Carlin is a *state* official and thus not subject to liability under *Monell*.

**MEMORANDUM DECISION AND ORDER - 13**

29-1.) In fact, Lopez is no longer incarcerated and thus poses no ongoing threat to Cloyd's safety while he remains in State custody. Although Cloyd asserts that Carlin maintains an ongoing policy or custom of ignoring inmate safety complaints, Carlin flatly denies that allegation, (*Id.* ¶ 14), and there is nothing in the record to support it. At most, the record establishes a single incident that might have been avoided had the Defendants recognized Cloyd was at risk. Because the record contains no evidence of an ongoing violation of Cloyd's rights, his official capacity claim against Carlin fails as a matter of law.

B.   *Individual capacity claims*

For Cloyd's individual capacity claims to survive summary judgment, the record viewed in the light most favorable to Cloyd must establish two elements. First, the record must show Cloyd was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the record must show Sergeant Brewer, Corrections Officer Henrie, or Warden Carlin was deliberately indifferent to that risk. *Id*.

"[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of*

*Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted). However, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

i.  *Warden Carlin*

The Court first considers whether Warden Carlin may be held personally liable for Cloyd's injuries under § 1983. An individual defendant "may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (internal quotation marks, citation, and alterations omitted). However, § 1983 does not allow for vicarious liability—that is, holding a supervisor liable merely because her employees acted unconstitutionally. *Id.* at 1206.

**MEMORANDUM DECISION AND ORDER - 15**

It is undisputed that Carlin had no personal role in the decision to place Cloyd and Lopez together as cellmates. (Carlin Aff. ¶ 9, Dkt. 29-1.) Further, Carlin did not know placing Lopez in Cloyd's cell created a risk of serious harm to Cloyd. (*Id.* ¶¶ 10–13.) In response, Cloyd claims two documents show Carlin knew of the risk: (1) a March 19, 2013 Idaho Department of Corrections "Information Report" concerning Lopez and his prior cellmate and (2) a March February 17, 2011 Idaho Department of Corrections "Disciplinary Offense Report" citing Lopez for aggravated assault. (Dkt. 33-1 at 1–2.) However, neither document establishes Lopez posed a serious risk to the safety of other inmates generally or to Cloyd specifically. The 2013 Information Report merely states that Lopez's prior cellmate complained that Lopez was mentally unstable and would not give him privacy, which prompted prison officials to separate the two. (*Id.* at 1.) And, although the 2011 Disciplinary Action Report establishes that Lopez committed aggravated assault while incarcerated at another facility, the factual description makes clear the offense involved threatening behavior—blowing kisses to, winking at, pacing near, and approaching the bunk of another inmate—not physical violence by Lopez. (*Id.* at 2.)

According to Carlin, the disciplinary history reflected in these documents is "typical of incarcerated individuals and would not have raised concerns regarding Mr. Lopez and Plaintiff sharing a cell." (Carlin Aff. ¶ 12, Dkt. 29-1.) In other words, neither the 2013 Information Report nor the 2011 Disciplinary Action Report creates a genuine dispute as to whether Carlin knew Lopez posed a substantial risk of serious harm to Cloyd. The two documents at most indicate Lopez made his former cellmate

**MEMORANDUM DECISION AND ORDER - 16**

uncomfortable and had threatened another inmate; they do not suggest Lopez had been or was likely to be physically violent toward other inmates. Because Cloyd has not presented evidence that Carlin was deliberately indifferent to a known risk of serious harm to Cloyd, he has failed to establish a genuine dispute of material fact as to Carlin's individual liability under § 1983.

### ii.    *Sergeant Brewer and Corrections Officer Henrie*

Likewise, there is no genuine dispute that Brewer and Henrie did not know Cloyd faced a substantial risk of serious harm from Lopez. Cloyd emphasizes that he spoke to both Brewer and Henrie about Lopez just two days before Lopez attacked him. But, even accepting Cloyd's account of these conversations, nothing in the record suggests that Brewer or Henrie came away from the conversations knowing or believing Cloyd faced a substantial risk of serious harm.

Cloyd told Henrie that "[he] feared for [his] safety and [he] wanted to be moved." (Cloyd Depo. 65:16–19.) Cloyd did not tell Henrie why he was afraid or provide Henrie any other information concerning Lopez. Similarly, Cloyd told Brewer he feared for his safety and wished to be moved.  (*Id*. 70:8–16.) In addition, Cloyd told Brewer about the verbal altercation between Lopez and inmate Neigo in the ICIO day room. (*Id*. 70:17–22.) Viewing this testimony in the light most favorable to Cloyd, Brewer and Henrie both knew Cloyd did not want to share a cell with Lopez because Lopez, for unspecified reasons, made Cloyd fear for his safety. But nothing in Cloyd's account of these conversations contradicts or otherwise genuinely disputes Brewer's and Henrie's sworn statements that they had "no information to suggest that Mr. Lopez would attack Cloyd or

**MEMORANDUM DECISION AND ORDER - 17**

that he otherwise posed a substantial safety risk to his cell mate." (Brewer Aff. ¶ 5, Dkt. 29-2; Henrie Aff. ¶ 5, Dkt. 29-3.)

Even assuming Lopez posed an apparent and substantial risk of harm to Cloyd, there is insufficient evidence to show the Brewer or Henrie actually perceived that risk and deliberately failed to act on it. As noted above, Lopez's prison disciplinary records do not evidence or even suggest a tendency to be physically violent toward other inmates. Moreover, it is undisputed that Lopez did not threaten Cloyd before the attack on March 26, 2013. Indeed, the only threatening conduct Cloyd discussed with either corrections officer was hearsay about Lopez's verbal altercation with Neigo. Given this record, the Court finds no reasonable fact-finder could conclude Brewer or Henrie knew of but ignored a substantial risk of serious harm to Cloyd.

## C.     Qualified Immunity

In the alternative, Defendants argue they are entitled to qualified immunity even if Cloyd's Eighth Amendment rights were violated. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). To be clearly established, the right must be "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is not necessary for the right to be established under the precise factual circumstances of the case, so long as existing precedent places the "constitutional

MEMORANDUM DECISION AND ORDER - 18

question beyond debate." *Id.* However, the right at issue must be defined with some

specificity, and not simply by reference to the general right of prisoners to be free from

cruel and unusual punishments. *See id*. at 2084.

At issue here is the asserted Eighth Amendment right of an inmate to be protected

from a cellmate, where the inmate generally articulates his fear of the cellmate to prison

officials but the cellmate has no known history of physical violence toward other inmates.

The only case Cloyd relies upon, *Farmer v. Brennan*, 511 U.S. 825 (1994), does not

clearly establish this asserted right.

*Farmer* involved a preoperative transsexual inmate, Dee Farmer, who identified as

female and projected female characteristics. 511 U.S. at  829–30. Over the course of her

incarceration, Farmer was placed in segregation for disciplinary reasons and for

protection. When Farmer was transferred to the United States Penitentiary in Terre Haute,

Indiana, she was placed in the all-male general population without objection. *Id.* at 830.

Within two weeks of being placed in the general population, Farmer was beaten and

raped in her cell by another inmate. *Id.* Farmer brought suit, alleging the decision to place

her in the general population violated her Eighth Amendment rights. In particular, Farmer

claimed prison officials not only knew that the general population was a violent

environment, but also knew that Farmer, as a transsexual, was particularly vulnerable to

sexual attack by other inmates. *Id*. at 831.

Reversing summary judgment in favor of the prison officials, the United States

Supreme Court held "[t]he question under the Eighth Amendment is whether prison

officials, acting with deliberate indifference, exposed a prisoner to a sufficiently

**MEMORANDUM DECISION AND ORDER - 19**

substantial risk of serious damage to his future health . . . ." *Id.* at 843 (internal quotation marks omitted). Emphasizing the subjective nature of this inquiry, the Court explained that deliberate indifference to a *known* risk is essential to finding a violation of the Eighth Amendment:

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

*Id.* at 844. Thus, *Farmer* stands for the proposition that prison officials violate the Eighth Amendment by failing to protect an inmate who faces a known, substantial risk of serious harm at the hands of other inmates.

That general standard is not sufficient to place the constitutional question presented in this case "beyond debate." *al-Kidd*, 131 S. Ct. at 2083. The parties do not cite, and the Court has not identified, a case in which a prison official—without other indicia of a substantial risk—was found liable for ignoring an inmate's unembellished report of fear for his personal safety. *Farmer* certainly is not that case.[3] But, even if such a case exists, it cannot be said the precedent is so clearly established that reasonable

---

[3]     There, it was at least arguable that placing Farmer in the general male prison population was so obvious a risk to her safety that a reasonable jury could infer prison officials knew of the risk. Here, the record viewed in Cloyd's favor does not establish that Lopez was such an obvious a threat to Cloyd's safety that the Defendants—contrary to their sworn statements—must have known the risk.

MEMORANDUM DECISION AND ORDER - 20

prison officials in Defendants' positions would have understood that failing to separate Cloyd from Lopez—given Cloyd's unelaborated fear for his safety and Lopez's limited history of verbal altercations and making others uncomfortable—amounts to cruel and unusual punishment. Defendants are therefore entitled to summary judgment on qualified immunity grounds.

## MOTION FOR APPOINTMENT OF COUNSEL (DKT. 31)

Cloyd's Motion for Appointment of Counsel requests the Court appoint an attorney to represent him during the discovery phase of the case. Cloyd claims to need an attorney's assistance with obtaining certain "vital documents" he requested from Defendants during discovery. (Dkt. 31 at 3.) Significantly, Cloyd filed the instant motion before the Court ruled on his Motion for In Camera Review (essentially a motion to compel production of the requested documents). As noted in the Order denying the Motion for In Camera Review, Defendants did, in fact, adequately respond to Cloyd's discovery requests. (Dkt. 36 at 1.) There are no outstanding discovery issues in this case; thus, the stated basis for Cloyd's request for counsel is moot.

## ORDER

## NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendants' Motion to Dismiss State Law Claims (Dkt. 28) is **GRANTED** and Plaintiff's state law claims are **DISMISSED WITH PREJUDICE**.

2) Defendants' Motion for Summary Judgment (Dkt. 29) is **GRANTED** and Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

**MEMORANDUM DECISION AND ORDER - 21**

3)  Plaintiff's Motion for Appointment of Counsel (Dkt. 31) is **DENIED AS MOOT**.

4)  Plaintiff's Supplemental Motion to Deny Summary Judgment (Dkt. 35) is **DENIED**.

5)  Defendants' Motion to Strike Plaintiff's Supplemental Motion to Deny Summary Judgment (Dkt. 37) is **GRANTED.**

6)  Plaintiff's Motion to Clarify Plaintiff's Allegations in Supplemental Motion to Deny Summary Judgment (Dkt. 39) is **DENIED**.

7)  Defendants' Motion to Strike Plaintiff's Motion to Clarify (Dkt. 40) is **DENIED AS MOOT.**

8)  A Judgment consistent with this Memorandum Decision and Order will issue concurrently.

Dated: June 18, 2015

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**